UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
SALVADOR DIAZ, :
:
Petitioner, :
: 22-CV-3063 (VSB)(BCM)
-against- :
:
: **OPINION & ORDER**
:
KENNETH GENALO, *et al.*, :
:
Respondents. :
:
------------------------------------------------------------X

Appearances:

Nhu-Y Ngo
The Bronx Defenders, Immigration Practice
New York, NY
*Counsel for Petitioner*

Tara Schwartz
Joshua Samuel Press
United States Attorney's Office, Southern District of New York
New York, NY
*Counsel for Respondents*

VERNON S. BRODERICK, United States District Judge:

      On July 6, 2023, Magistrate Judge Barbara C. Moses issued a Report and

Recommendation ("Report" or "Report and Recommendation") recommending that I grant

Petitioner Salvador Diaz's petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241

seeking an order directing Respondents[1] to provide him a constitutionally adequate bond hearing.

---

[1] The Amended Petition names three respondents: Thomas Decker, who was then the Director of the New York Field Office of United States Immigration and Customs Enforcement ("ICE"), and who has since been substituted by Kenneth Genalo, the current Acting Director of the New York Field Office; Alejandro Mayorkas, the Secretary of Homeland Security; and Merrick Garland, the Attorney General of the United States. (Doc. 15.) Respondents will be referred to collectively as "Respondents" or "the Government" hereinafter.

(Doc. 36.) For the reasons set forth below, I ADOPT in part and MODIFY in part the Report and Recommendation and GRANT the Petitioner's Writ for Habeas Corpus as follows: I find that Petitioner is entitled to an individualized bond hearing to determine whether his continued detention is justified, and that at such hearing, the Government shall bear the burden of proving by clear and convincing evidence that Petitioner poses a risk of flight or a danger to the community.

## I.     Factual and Procedural Background[2]

Petitioner is a citizen of the Dominican Republic who was admitted to the United States as a lawful permanent resident on June 1, 1992, when he was nineteen years old. (Report at 2.) After arresting Petitioner at Rikers Island on July 10, 2021, ICE determined that Petitioner was subject to mandatory detention pursuant to § 236(c) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1226(c). (*Id*. at 3.) Section 236(c) provides that "[t]he Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii)[.]" 8 U.S.C. § 1226(c)(1)(B).

Petitioner's removal proceedings commenced on July 11, 2021, the day after his arrest. (*Id*.) Following two adjournments, including once to enable Petitioner to obtain an attorney, Petitioner admitted the allegations against him and conceded the charge of removability at a master hearing on August 16, 2021. (*Id*. at 4.) The immigration judge ("IJ") adjourned the proceedings once again to allow Petitioner to prepare applications for relief from removal. (*Id*.) After counsel raised concerns about Petitioner's competency to proceed at a September 4, 2021 hearing, a competency hearing took place on February 8, 2022. (*Id*. at 4–5.) Although the

---

[2] I assume familiarity with the more complete factual and procedural background as thoroughly set out in the Report; neither party objects to the facts as discussed in the Report.

Government stipulated that Petitioner was not competent for purposes of his removal proceedings, the IJ denied Petitioner's request to terminate or administratively close those proceedings, concluding that his rights could be protected by certain procedural safeguards. (*Id.*) After several adjournments, the IJ denied Petitioner's application for relief and ordered him removed. (*Id.* at 6.)

On June 27, 2022, Petitioner timely filed a Notice of Appeal of the IJ's decision with the Board of Immigration Appeals ("BIA"). (*Id.*) On January 3, 2023, the BIA sustained Petitioner's appeal. (*Id.* at 6 –7.) "The BIA concluded that remand was warranted on three separate grounds." (*Id.* at 7.) On remand, the IJ again denied Petitioner's application, which Petitioner then appealed to the BIA. (*Id.*)

On April 13, 2022, while Petitioner's removal proceedings were ongoing, Petitioner filed a petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 under the name "J.D.," (Doc. 1), accompanied by a motion for leave to proceed anonymously, (Doc. 2), which Judge Moses denied, (Doc 9). On May 11, 2022, Petitioner publicly filed his amended petition. (Doc. 15 ("Petition").) On July 6, 2023, Magistrate Judge Moses issued a Report and Recommendation recommending that I grant the Petition. (Doc. 36.) The Government filed its objections to the Report on July 20, 2023, (Doc. 37), and the Petitioner filed his response on August 3, 2022, (Doc. 39).

The parties have since filed letters updating me on the status of Petitioner's removal proceedings. On January 17, 2024, Petitioner informed me that the BIA dismissed his appeal of the decision on his removability on January 4, 2024. (Doc. 41.) Petitioner also informed me that he subsequently filed a Petition for review of the BIA's decision with the Second Circuit on January 11, 2024, *Diaz v. Garland*, No. 24-123, (2d Cir. Jan. 11, 2024), ECF No. 1, as well as a

3

motion to stay his removal on January 16, 2024, *id.* (2d Cir. Jan. 16, 2024), ECF No. 5. Petitioner argues that his detention remains subject to § 1226 because he has moved for a stay of removal in the Second Circuit and is thus subject to the forbearance policy in effect, which assures that the filing of a motion to stay removal "will suffice to prevent removal" while a petition for review and stay motion are both pending in the Second Circuit. (Doc. 41 at 2 (citing *Efstathiadis v. Holder*, 752 F.3d 591, 599 n.5 (2d Cir. 2014) (per curiam)).) On January 22, 2024, I ordered the Government to file its response. (Doc. 42.) By letter dated March 4, 2024, the Government file a letter arguing that because Petitioner's order of removal was administratively final, and because the Second Circuit's forbearance policy is not a court-ordered stay, Petitioner's continued detention is now governed by a different provision of the INA, § 1231(a). (Doc. 43-1.)

On June 25, 2024, Petitioner filed a letter providing notice of the Second Circuit's "directly applicable [and] precedential" decision in *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024). (Doc. 45.) In *Black*, the Second Circuit held—as a matter of first impression—that the "Fifth Amendment's guarantee of due process precludes a noncitizen's unreasonably prolonged detention under section 1226(c) without a bond hearing." *Black*, 103 F.4th at 159. The court of appeals also held as matter of first impression that a due process challenge to prolonged detention under § 1226 should be reviewed on a case by case, under the framework set forth in *Mathews v. Eldridge*. *See id.* at 157 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Petitioner argues that applying the *Mathews* standard now required by the Second Circuit dictates the same conclusion as that recommended by Judge Moses. (Doc. 45.) In response, the Government filed a letter stating that because Petitioner's detention is governed by § 1231(a) and not § 1226(c), *Black* is inapplicable, and therefore that I do not have the statutory authority to

4

address the merits of the Petition.  (Doc. 46.)

## II. Legal Standard

Reviewing a magistrate judge's report and recommendation, I "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  I review de novo the portions of the Report to which timely and specific written objections are made.  *Id.*; Fed. R. Civ. P. 72(b)(3).  "The objection must be 'specific and clearly aimed at particular findings' in the [Report]."  *Bussey v. Rock*, No. 12-CV-8267, 2016 WL 7189847, at *2 (S.D.N.Y. Dec. 8, 2016) (quoting *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)).  "Otherwise, the court will review the [Report] strictly for clear error when a party makes only conclusory or general objections, or simply reiterates the original arguments."  *Id.* (internal quotation marks omitted).  "Even where exercising *de novo* review, a district court 'need not specifically articulate its reasons for rejecting a party's objections or for adopting a magistrate judge's report and recommendation in its entirety.'"  *Bush v. Colvin*, 15-CV-2062, 2017 WL 1493689, at *4 (S.D.N.Y. Apr. 26, 2017) (alteration adopted) (quoting *Morris v. Local 804, Int'l Bhd. of Teamsters*, 167 F. App'x 230, 232 (2d Cir. 2006)).  Under a clear error standard of review, "so long as there is a basis in the evidence for a challenged inference, [the court] do[es] not question whether a different inference was available or more likely."  *United States v. Freeman*, 443 F. App'x 664, 666 (2d Cir. 2011) (quoting *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007)).

## III. Discussion

### A. *Section 1226 Governs Petitioner's Continued Detention*

As a threshold matter, I find that Petitioner's detention continues to be governed by § 1226.  As both parties note, I have already addressed the issue of whether a petitioner's

5

detention shifts from § 1226 to § 1231(a) while his removal is paused not because of a court-ordered stay, but due to the Second Circuit's forbearance policy. *See Jack v. Decker*, No. 21-CV-10958, 2022 WL 16836918, at *1 (S.D.N.Y. Nov. 8, 2022), *report and recommendation adopted*, 2022 WL 4085749 (S.D.N.Y. Aug. 19, 2022).[3] In *Jack* I adopted the Report and Recommendation of Magistrate Judge Robert W. Lehrburger and found that Judge Lehrburger's thorough reasoning was "consistent with the overwhelming majority of courts in this Circuit [that] have found that the Forbearance Policy amounts to a court ordered stay of removal of the [noncitizen] and that detainees with a pending petition for review are detained pursuant to . . . § 1226." *Jack v. Decker*, No. 21-CV-10958, WL, 2022 WL 4085749, at *6 (S.D.N.Y. Aug. 19, 2022) (quoting *Doe v. Decker*, No. 21-CV-5257, 2021 WL 6066015, at *2 (S.D.N.Y. Nov. 19, 2021)); *see also Villatoro v. Joyce*, No. 22-CV-6270, 2024 WL 68533, at *4 (S.D.N.Y. Jan. 5, 2024) (collecting cases). The Government does not provide any additional rationale other than that they have already presented to me, and I see no reason to alter my previous determination. Thus, Petitioner's detention continues to be governed by § 1226.

### B. *Petitioner is Entitled to a Bond Hearing*

Next, I consider the Government's objections to the Report, which I review de novo. The Government attacks the Report's recommendation for two primary reasons. First, the Government argues that due to the Government's "weighty interest in detention of certain criminal aliens," prolonged detention under § 1226 cannot be unconstitutional. (Doc. 37 at 4.) Second, the Government objects to Judge Moses' application of the *Sajous* multi-factor test to assess the constitutionality of Petitioner's detention, arguing that despite its application by many courts in this district, that test has not been adopted by the Second Circuit and is "not the correct

---

[3] The parties did not wish to submit additional briefing on this issue. (*See* Docs. 43-1 at 2 & 44 at 1.)

measure of constitutionally adequate due process." (Doc. 37 at 4–5 n.4.)[4]

### 1. The Second Circuit's Decision in *Black* Controls

In light of the Second Circuit's intervening decision in *Black* and my previous decision in *Jack*, the Government's objections fail as a matter of law. At the time Judge Moses issued the Report, the Second Circuit had not yet decided a due process challenge to an individual's prolonged detention without a bond hearing under section 1226(c), nor had it dictated the framework for doing so. In *Black*, however, it decided both issues. *Black*, 103 F.4th at 146.

First, the Second Circuit held that "the Constitution does not permit the Executive to detain a noncitizen for an unreasonably prolonged period under section 1226(c) without a bond hearing; at some point, additional procedural protections—like a bond hearing—become necessary." *Id*. at 145. The Government's objection relies on the Supreme Court's dicta in *Demore* that "deportable criminal [noncitizens] who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers," which the Government suggests is "sufficient to establish the constitutionality of [Petitioner]'s detention." (Doc. 37 at 4 (quoting *Demore v. Kim*, 538 U.S. 510, 513 (2003)).) The Government's interpretation of *Demore* is flawed and cannot be squared with the Second Circuit's reasoning in *Black* that *Demore* "le[ft] open the question whether prolonged detention under section 1226(c) without a bond hearing will at some point violate an individual detainee's due process rights." *Black*, 103 F.4th at 142. Therefore, this objection advances an interpretation of both *Demore* and section 1226 that the Second Circuit has now flatly rejected in *Black*. Thus, the Government's argument that

---

[4] As set forth in the Report, those factors are: "(1) the length of time the [noncitizen] has already been detained"; (2) "whether the [noncitizen] is responsible for the delay"; (3) "whether the detained [noncitizen] has asserted defenses to removal"; (4) "whether the [noncitizen]'s civil immigration detention exceeds the time the [noncitizen] spent in prison for the crime that rendered him removable"; and (5) "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." (Report at 13 (citing *Sajous v. Decker*, No. 18-CV-2447, 2018 WL 2357266 (S.D.N.Y. May 23, 2018)).)

7

detention cannot be unconstitutionally prolonged under section 1226 must fail.

The Government's remaining objections also fail as a matter of law. After reviewing the variety of approaches taken by courts when assessing whether detention has become unconstitutionally prolonged, the Second Circuit held that "courts hearing due process challenges to prolonged section 1226(c) detention should apply the *Mathews* framework to determine, case by case, whether and when due process requires that a particular detained noncitizen receive a bond hearing." *Black*, 103 F.4th at 151–152 (citing *Mathews*, 424 U.S. at 335). The Supreme Court in *Mathews* identified three factors bearing on the constitutional need for procedural protections: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Because the Second Circuit had not yet decided *Black* at the time the Report was issued, Judge Moses did not analyze Petitioner's under the *Mathews* factors. Despite its opportunity to do so, in its July 22, 2024 letter, the Government failed to meaningfully engage with Petitioner's argument regarding *Black*'s applicability and import or to consider the implication of my decision in *Jack*, instead reiterating its position that Petitioner's detention is governed by section 1231(a) and declining to advance any arguments in the alternative. (Doc. 46.) Because I disagree with the Government and conclude that section 1226 governs Petitioner's detention, I also conclude that the Second Circuit's intervening decision in *Black* controls. In addition, because the Government's objections critiquing Judge Moses' application of the *Sajous* factors are rendered largely moot in light of *Black*, I need not consider such objections. However,

because I nonetheless find Judge Moses' evaluation of Petitioner's circumstances helpful in assessing the Petition under the *Mathews* factors, I adopt that portion of the Report for that limited purpose.

### 2. Application of the *Mathews* Factors

I next consider whether Petitioner's prolonged detention violates due process by applying the *Mathews* standard now required by the Second Circuit. With respect to the first factor, as with the petitioners in *Black*, "the private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Black*, 103 F.4th at 151 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). Here, Petitioner has been detained for more than three years, far exceeding the "relatively short duration of section 1226(c) detention" envisioned in *Demore*. *Black*, 103 F.4th at 151 (citing *Demore*, 538 U.S. at 513); *see also* Report at 15. In addition, given Petitioner's well documented and severe mental illness, (*see* Report at 7–8), which is itself a private interest that has undoubtably been seriously affected by his prolonged detention, this factor weighs heavily in his favor.

The second *Mathews* factor—"the risk of an erroneous deprivation of such [private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"—also weighs in Petitioner's favor. 424 U.S. at 335. In analyzing this factor, "[t]he only interest to be considered . . . is that of the detained individuals—not the government." *Black*, 103 F.4th at 152. Here, as was true with respect to the petitioners in *Black*, "the almost nonexistent procedural protections in place for section 1226(c) detainees markedly increase[] the risk of an erroneous deprivation of [Petitioner's] private liberty interests." *Id*. Moreover, the minimal burden placed on the Government in granting Petitioner a bond hearing

9

would add value by permitting review of Petitioner's custody status for the first time in over three years.  Therefore, this factor also weighs in favor of Petitioner.

Lastly, the third *Mathews* factor—which considers the Government's interest—also favors Petitioner.  *See* 424 U.S. at 335.  Although not framed as a *Mathews* factor, the Government identifies the same two primary interests in support of its detention of noncitizens such as Petitioner as were identified by the Government in *Black*:  "(1) ensuring the noncitizen's appearance at proceedings, and (2) protecting the community from noncitizens who have been involved in crimes that Congress has determined differentiate them from others."  103 F.4th at 153.  However, as the Second Circuit noted in *Black,* ordering a bond hearing as an "additional procedural safeguard . . . [does] nothing to undercut those interests."  *Id*.  Indeed, although "the [G]overnment's legitimate interests justify a relatively short-term deprivation of liberty, the balance of interests shifts as the noncitizen's detention is prolonged without any particularized assessment of need."  *Id*. at 154 (internal citation omitted).  In addition, requiring a bail hearing where the Government must justify continued detention also "minimize[es] the enormous impact of incarceration in cases where it serves no purpose," which is of "paramount" importance.  *Id*.  Thus, the third *Mathews* factor also favors Petitioner.

Accordingly, having applied the *Mathews* factors as required by the Second Circuit, I find that due process entitles Petitioner to an individualized bond hearing by an IJ.

### 3. The Burden of Proof at the Petitioner's Bond Hearing Will Be on the Government

The Government's objection to Judge Moses' finding that the Government must bear the burden at a bond hearing of justifying by clear and convincing evidence that Petitioner poses a risk of flight or a danger to the community is also rendered moot in light of *Black*.  *See* 103 F.4th at 155 ("Where the government seeks to continue depriving a person of their liberty—especially

when a district court has already found that deprivation to be unconstitutionally prolonged—we must require the government to bear the burden of proving the need for continued detention.") Moreover, as noted by Petitioner, the Government did not object to Judge Moses' recommendation that the IJ consider Petitioner's ability to pay and alternative conditions of release when setting a bond.  (Doc. 39 at 7–8 (citing Report at 21).)  Even if it had, however, the Second Circuit in *Black,* "guided principally" by *Mathews*, also held that the district court had properly required the IJ to consider the noncitizen's ability to pay and alternatives to detention when setting the bond amount.  *Black*, 103 F.4th at 158 (noting that once an IJ determines that a noncitizen does not pose a danger to the community, "refusing to consider ability to pay and alternative means of assuring appearance creates a serious risk that the noncitizen will erroneously be deprived of the right to liberty purely for financial reasons").  Therefore, in light of the Second Circuit's holding in *Black*, the Government's final objection fails.

Accordingly, at the bond hearing, the Government must bear the burden of showing, by clear and convincing evidence, that Petitioner presents an unreasonable flight risk or threat to the community.  The IJ must also consider Petitioner's ability to pay and the availability of alternative means of assuring his appearance.

**IV.     Conclusion**

For the reasons stated above, the Governments objections are overruled, the Report is ADOPTED in part and MODIFIED in part and his Petition for a Writ of Habeas Corpus is GRANTED.  By September 30, 2014, the Government shall provide an individualized bond hearing to Petitioner to determine whether his continued detention is justified.  At the bond hearing, which must be before a neutral IJ, the Government must bear the burden of showing, by clear and convincing evidence, that Petitioner presents an unreasonable flight risk or threat to the

community.

Should they fail to provide such a hearing, the Government shall release Petitioner from detention. The Government shall file a status letter to update me about Petitioner's status by October 4, 2024. The Clerk of Court is respectfully directed to terminate all open motions.

SO ORDERED.

Dated: September 9, 2024
    New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge